STARK, P.J.
¶ 1 This appeal involves efforts by American Transmission Company LLC and ATC Management Inc. (collectively ATC) to acquire an easement over property owned by Lila Zastrow and David Hendrickson (collectively, Zastrow) in order to construct two high-voltage transmission lines. The Public Service Commission (PSC) issued ATC a certificate of public convenience and necessity (Certificate) for the construction of the transmission lines. After receiving a jurisdictional offer from ATC, Zastrow filed the instant lawsuit under WIS. STAT. § 32.06(5) (2015-16),[1] challenging ATC's right to condemn her property. Zastrow contended ATC had failed to negotiate with her in good faith regarding the terms of a vegetation management plan within the proposed easement. She argued such good faith negotiation was required under § 32.06(2a).
¶ 2 The circuit court granted summary judgment in favor of ATC, concluding WIS. STAT. § 32.06(2a) does not require a condemnor to negotiate in good faith regarding any subject other than compensation. We agree with the circuit court's conclusion.
*824 We further conclude that nothing in the Certificate required ATC to negotiate with Zastrow regarding the terms of a vegetation management plan. We also reject Zastrow's argument that ATC made false statements about its obligation to negotiate, in violation of WIS. STAT. § 32.29. Ultimately, we conclude that, while framed as a challenge to ATC's duty of good faith negotiation, the instant lawsuit is actually an attempt to indirectly challenge the PSC's failure to include specific vegetation management conditions in the Certificate. However, Zastrow did not seek judicial review of the PSC's decision, and she has therefore forfeited her right to consideration of that issue. For all of these reasons, we affirm the circuit court's grant of summary judgment in favor of ATC.[2]
BACKGROUND
¶ 3 Zastrow owns property in Outagamie County. At the time of Zastrow's purchase in 1987, Wisconsin Electric Power Company held a transmission line easement over the property. A single, 138-kilovolt transmission line was located within the easement. The easement was subsequently acquired by ATC. On May 1, 2014, ATC filed an application with the PSC for a Certificate permitting ATC to construct and place in operation two high-voltage transmission lines connecting an electrical substation in Outagamie County with another substation in Oconto County. See WIS. STAT. § 196.491(3). The new lines would cross Zastrow's property, running next to the existing transmission line.
¶ 4 Zastrow actively participated in the PSC proceedings regarding ATC's Certificate application. She opposed the project, arguing ATC's vegetation management practices were excessive. The record reflects that ATC's preferred practice was to clear an entire right-of-way of vegetation during the construction of transmission lines, and to repeat the clearing process thereafter on a five-year recurring basis. ATC's aim was to "convert trees and woody vegetation to grasses and forbs (e.g., milkweed, sunflowers, etc.)" in order to "create a tree-resistant right-of-way." ATC contended these practices were necessary to keep transmission lines "clear of all incompatible trees, brush and other vegetation that could interfere with the safe operation and maintenance of" the lines.
¶ 5 Zastrow disagreed, referring to ATC's practices as "scorched earth" vegetation management. Zastrow argued ATC should instead employ a "wire-border zone technique." She explained that, under this technique, the area within a transmission line right-of-way is separated into two zones: (1) a wire zone, encompassing the area "directly under the wires and extending outward about 10 feet on each side"; and (2) a border zone, encompassing the remaining area within the right-of-way. According to Zastrow, the wire zone "is managed to promote a low-growing plant community dominated by grasses, herbs and small shrub[s]," while the border zone "is managed to establish small trees and tall shrubs." Zastrow argued this approach would "not only protect the electric facility and reduce long-term maintenance, but *825 also enhance wildlife habitat, forest ecology and aesthetic values."
¶ 6 During the administrative proceedings on ATC's Certificate application, PSC staff prepared a "Decision Matrix" outlining the issues the PSC needed to decide, summarizing the parties' positions on those issues, and providing recommendations. Addressing the vegetation management issue, PSC staff concluded ATC's "justification for its current vegetation management practices and subsequent impacts upon landowner properties [was] insufficient." PSC staff therefore recommended that the PSC impose certain conditions on ATC related to vegetation management, including a requirement that ATC "manage and maintain applicable ROWs [right-of-ways] in accordance with the wire zone-border zone technique."
¶ 7 The PSC issued its final decision on May 21, 2015, granting ATC a Certificate for the construction and operation of the new transmission lines. The PSC's decision included a number of conditions related to environmental and agricultural factors.
¶ 8 As relevant to this appeal, the PSC acknowledged the concerns that Zastrow and the PSC's own staff had raised about ATC's vegetation management practices. However, contrary to its staff's recommendations, the PSC did not impose any conditions requiring ATC to employ wire zone-border zone vegetation management techniques. Instead, the PSC stated it would "engage in a dialogue and informal process to review vegetation management practices of ATC and other transmission owners." To that end, the PSC directed both its staff and ATC to "promptly commence an informal stakeholder process to examine ROW practices." The PSC explained, "The intention is not simply to determine what the plan and practice is for this project, but to gain additional knowledge regarding an issue that is of great concern to many residents throughout the state who live near electric ROWs." The PSC further stated, "If a consensus on modifications to current practices cannot be reached, the [PSC] may decide to investigate this matter further in a generic docket." The PSC also expressly stated, "To the extent any other conditions that were proposed or discussed in the record of this proceeding have not been imposed, the [PSC] finds that they are unreasonable, not necessary or inconsistent with the conditions proposed in other similar transmission cases."
¶ 9 Zastrow moved for clarification and/or reconsideration of the PSC's decision. As relevant here, she argued a "final, equitable, verifiable and compensatory vegetation management plan must ... be in place before easement negotiations begin." The PSC did not respond to Zastrow's motion, which was therefore deemed denied. See WIS. ADMIN. CODE § PSC 2.28 (Apr. 2007).
¶ 10 The PSC's final decision required ATC to "obtain new easements from landowners with ROW[s] for this project, regardless of whether the ROW is entirely new or shared with [an] existing ATC ROW." Accordingly, following issuance of the Certificate, ATC provided Zastrow with a copy of a proposed easement contract that, among other things, granted ATC the right to "[t]rim, cut down and remove any or all brush, bushes, trees and overhanging branches now or hereafter existing in, on and over the Perpetual Easement Strip." The proposed easement contract also prohibited Zastrow from planting trees, brush, bushes, or shrubs in the easement without ATC's prior written consent.
¶ 11 Representatives for Zastrow and ATC had several communications regarding vegetation management rights during their subsequent negotiations. However, *826 ATC declined to modify the proposed easement contract's vegetation management terms in response to Zastrow's requests. On July 5, 2016, ATC sent Zastrow a final, written offer of $20,000 for the proposed easement. ATC then served a jurisdictional offer on Zastrow on August 1, 2016. See WIS. STAT. § 32.06(3).
¶ 12 Shortly thereafter, Zastrow filed the instant lawsuit under WIS. STAT. § 32.06(5), challenging ATC's right to condemn her property. She alleged ATC had failed to negotiate with her in good faith, contrary to § 32.06(2a), by "[d]emanding un-needed rights to cut trees and other foliage on [her] land ... and refusing to negotiate an alternative set of rights sufficient to protect and maintain" ATC's transmission lines.[3] Accordingly, Zastrow asked the circuit court to declare that ATC had failed "to satisfy the jurisdictional pre-requisite[ ] of good faith negotiation necessary for ATC to possess the right to condemn" her property.
¶ 13 The parties ultimately filed cross-motions for summary judgment. On August 15, 2017, the circuit court issued a written decision granting summary judgment in favor of ATC and denying Zastrow's motion. The court agreed with Zastrow, as a general matter, that an action filed under WIS. STAT. § 32.06(5) was "an appropriate remedy for [Zastrow] to seek relief for non-monetary issues involving a taking of [her] property." However, the court concluded Zastrow's claim nevertheless failed because § 32.06(2a) did not require ATC to negotiate in good faith regarding any subject other than compensation. The court subsequently entered a written judgment dismissing Zastrow's complaint with prejudice, and Zastrow now appeals.[4]
STANDARD OF REVIEW
¶ 14 We independently review a grant of summary judgment, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶ 6, 306 Wis.2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).
¶ 15 Statutory interpretation and the application of a statute to specific facts are questions of law that we review independently. Garcia v. Mazda Motor of Am., Inc. , 2004 WI 93, ¶ 7, 273 Wis.2d 612, 682 N.W.2d 365. Our analysis begins with the plain language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meanings. Id. We interpret statutory language in context, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. Id. , ¶ 46. "If this process of analysis yields a *827 plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id. (quoting Bruno v. Milwaukee Cty. , 2003 WI 28, ¶ 20, 260 Wis.2d 633, 660 N.W.2d 656 ).
DISCUSSION
I. WISCONSIN STAT. § 32.06(2a) did not require ATC to negotiate in good faith with Zastrow regarding vegetation management.
¶ 16 As noted above, Zastrow commenced the instant lawsuit under WIS. STAT. § 32.06(5), which permits a property owner to file suit in order to "contest the right of the condemnor to condemn the property described in the jurisdictional offer for any reason other than that the amount of compensation offered is inadequate." Zastrow contends ATC has no right to take her property because the undisputed facts show that ATC failed to negotiate with her in good faith regarding the terms of a vegetation management plan. She argues such good faith negotiation was required under § 32.06(2a), which states, in part, that before making a jurisdictional offer under § 32.06(3), a condemnor "shall attempt to negotiate personally with the owner or one of the owners or his or her representative of the property sought to be taken for the purchase of the same."[5]
¶ 17 We agree with both ATC and the circuit court that the plain language of WIS. STAT. § 32.06(2a) -when read in its entirety-unambiguously shows that ATC was not required to negotiate in good faith with Zastrow regarding any topic other than compensation.[6] Subsection (2a) contains multiple references to compensation or price. First, the subsection is entitled "Agreed price." See § 32.06(2a).[7] Second, the subsection requires the condemnor to "consider the owner's appraisal" during the course of the negotiation. Id. Third, it permits the condemnor to "contract to pay the items of compensation enumerated in ss. 32.09 and 32.19 where shown to exist." Id. Fourth, if a negotiated sale is made, subsec. (2a) requires the condemnor to record a "certificate of compensation" identifying, among other things, the nature of the interest acquired "and the compensation for such acquisition." Id. Fifth, subsec. (2a) permits a landowner to "appeal from the amount of compensation ... by filing a petition ... for proceedings to determine the amount of just compensation." Id.
¶ 18 These repeated references to compensation and price plainly indicate that the negotiation required by WIS. STAT. § 32.06(2a) is limited to the amount of compensation that a condemnor may ultimately pay to acquire a landowner's property. Before a jurisdictional offer is made, the parties may choose to negotiate on a number of issues, including but not limited to the property to be acquired, how and *828 when it will be acquired, and the rights and responsibilities of the parties after acquisition. However, subsec. (2a) contains no reference to any subject of required negotiation other than compensation. In addition, the fact that subsec. (2a) grants landowners the right to appeal only one issue-i.e., the amount of compensation-further indicates that the negotiation required by subsec. (2a) is limited to that topic.
¶ 19 In arguing to the contrary, Zastrow observes that WIS. STAT. § 32.06(2a) refers to "the property sought to be taken." (Emphasis added.) She also notes that § 32.06(2)(a), which discusses condemnor appraisals, refers to "the property proposed to be acquired." (Emphasis added.) Zastrow argues the legislature's use of the words "sought" and "proposed" shows that "the property to be acquired is subject to discussion" during the negotiation process. Stated differently, Zastrow contends the words "sought" and "proposed" show that "the precise terms of the easement at issue"-the bundle of sticks to be acquired-are not a "foregone conclusion" but are instead subject to the condemnor's duty to negotiate.
¶ 20 We disagree. The words "proposed" and "sought" in WIS. STAT. § 32.06(2)(a) and (2a) merely signify that, at the stage of the proceedings described in those subsections, the taking or acquisition of the landowner's property is not yet final. In other words, although the condemnor proposes or seeks to take certain property from the landowner, it is not yet a given that the taking will actually occur. Notably, § 32.06 expressly permits a condemnor to abandon its condemnation attempt at two later stages of the proceedings. See § 32.06(9)(a), (10)(c). The words "proposed" and "sought" in § 32.06(2)(a) and (2a) simply recognize this uncertainty as to whether a taking will ultimately be completed. Those words cannot reasonably be interpreted as indicating that a condemnor has a duty to negotiate regarding the scope of the property interest that is subject to condemnation.
¶ 21 Zastrow also emphasizes that WIS. STAT. § 32.06(2a) requires a condemnor to record with the register of deeds "any conveyance by or on behalf of the owner of the property to the condemnor executed as a result of negotiations under this subsection." (Emphasis added.) She contends the word "any" shows that the legislature "anticipated negotiation shaping the 'precise easement' during those negotiations where the condemnor seeks to voluntarily purchase the property rights and interests at issue." She asserts, "If the terms of the conveyance were set by the condemnor and not subject to change through negotiation, then the legislature would have simply directed the condemnor to record 'the conveyance.' "
¶ 22 Again, we disagree. The legislature's use of the word "any" to modify the "conveyance" a condemnor must record cannot reasonably be read to suggest that the legislature intended to impose a negotiation requirement regarding issues other than compensation. Instead, the phrase "any conveyance ... executed as a result of negotiations under this subsection" merely reflects the fact that, although WIS. STAT. § 32.06(2a) requires a condemnor to negotiate with a landowner in the hope of achieving a negotiated sale, the condemnor and landowner will not necessarily reach an agreement. In addition, as ATC observes, a conveyance of property from a landowner to a condemnor may take multiple forms, including a warranty deed, a quitclaim deed, a trustee's deed, and an easement. The legislature's use of the word "any" to modify the "conveyance" that may result from negotiations between a condemnor and landowner recognizes *829 this uncertainty regarding the conveyance's form.
¶ 23 Zastrow suggests that our interpretation of WIS. STAT. § 32.06(2a) is inconsistent with § 32.06(5), which permits a landowner to file suit in order "to contest the right of the condemnor to condemn the property described in the jurisdictional offer for any reason other than that the amount of compensation offered is inadequate." She appears to contend that, because § 32.06(5) permitted her to file suit against ATC to contest its right of condemnation based on issues other than the amount of compensation, she must have been permitted to file suit on the specific ground that ATC failed to negotiate in good faith regarding a noncompensation issue.
¶ 24 Zastrow's argument in this regard fails because it incorrectly presumes that ATC was required under WIS. STAT. § 32.06(2a) to negotiate in good faith regarding issues other than compensation. We have already concluded, based on the plain language of that statute, that ATC had no such obligation. We do not dispute that § 32.06(5), as a general matter, permits a landowner to challenge a condemnor's right to condemn his or her property based on issues other than the amount of compensation. However, that fact does not compel a conclusion that a landowner must be able to sue based on the specific issue of a condemnor's failure to negotiate in good faith under § 32.06(2a) regarding noncompensation issues. Our interpretation of § 32.06(2a) therefore does not conflict with § 32.06(5).[8]
¶ 25 To be clear, we do not hold in this opinion that WIS. STAT. § 32.06(2a)prohibits a condemnor from negotiating with a landowner regarding topics other than compensation. As stated in paragraph 18 above, a condemnor is free to do so, and in fact, such negotiation over noncompensation issues may, in many cases, make it more likely that the required negotiation over price will result in a successful negotiated sale. We merely hold that the plain language of § 32.06(2a) does not require a condemnor to negotiate in good faith regarding noncompensation issues, and accordingly, a condemnor's failure to do so does not provide a basis for a landowner to challenge the condemnor's right to take his or her property under § 32.06(5).
II. The Certificate did not require ATC to negotiate in good faith regarding vegetation management.
¶ 26 Zastrow next argues that ATC agreed to negotiate in good faith regarding vegetation management when it accepted the Certificate. We disagree. While the Certificate imposed a number of conditions on ATC, including that it obtain new easements and "work with all landowners ... regarding the placement of facilities" on their property, it did not include any condition requiring ATC to negotiate *830 with landowners regarding vegetation management. ATC therefore cannot be deemed to have agreed to such a condition by accepting the Certificate.
¶ 27 Zastrow nevertheless contends that ATC's acceptance of the Certificate required it to negotiate regarding vegetation management, due to a representation ATC made during the PSC proceedings. Zastrow observes that, during those proceedings, the PSC issued "Data Request No. 05.04" to ATC, which asked: "What type of information is provided to the landowner about vegetation management practices prior to work being conducted on their property? Who provides that information and in what form?" ATC responded, in relevant part: "[T]he right-of-way ('ROW') agent will provide landowners a copy of the pamphlet entitled Rights of Ways and Easements for Electric Utility Construction , published by the [PSC] and attached as Exhibit 05.04a. This pamphlet discusses what landowners can expect regarding vegetation management in the ROW." As relevant here, the pamphlet states:
A landowner does not have to sign the standard easement form as the utility agent initially presents it. Landowners have the right to negotiate for terms in the easement contract that will avoid or reduce the line's impact on their land. The utility, in turn, has an obligation to negotiate.
(Emphasis added.) Based on this language, Zastrow argues ATC represented to the PSC that it would negotiate with landowners regarding vegetation management. Zastrow contends the PSC issued the Certificate in reliance on that representation, and ATC is therefore required to negotiate.
¶ 28 We reject this argument because, in response to a separate data request, ATC clearly informed the PSC that it did not typically negotiate regarding vegetation management. In Data Request No. 05.07, the PSC asked: "What are the easement terms that landowners are able to negotiate when determining vegetation management practices on their property? Are landowners made aware of these negotiable terms? If so, when does this occur in the negotiation process and how?" ATC responded:
Generally speaking, the terms of the easement that ATC will acquire to construct, maintain, and operate its transmission facilities in a safe and reliable manner are not negotiable. Unique situations may exist, however, where strict adherence to the form easement terms is not appropriate or feasible. These situations, if they arise, will be addressed on a case-by-case basis.
¶ 29 Based on this response, it is not reasonable to conclude that the PSC mistakenly believed ATC would negotiate with landowners regarding vegetation management in all cases. Moreover, even if the PSC held such a mistaken belief, Zastrow cites no evidence indicating that the PSC relied on that belief when it decided to issue a Certificate to ATC. If negotiation over vegetation management was so important to the PSC that its issuance of the Certificate hinged on the presence of that factor, the PSC presumably would have included a condition in the Certificate requiring ATC to negotiate the terms of a vegetation management plan. As noted above, the PSC did not include any such condition in the Certificate. We therefore reject Zastrow's argument that ATC's "acceptance" of the Certificate required it to negotiate regarding vegetation management.
¶ 30 In a related argument, Zastrow also appears to contend that the PSC-prepared pamphlet discussed above, in and of itself, imposed a duty to negotiate the terms of a vegetation management plan. Once again, we reject Zastrow's position. As explained above, under the plain language of *831 WIS. STAT. § 32.06(2a), a condemnor's duty to negotiate does not extend to any issue other than compensation. Zastrow does not develop any argument that the PSC's rulemaking authority permits it to broaden the scope of the negotiation required by § 32.06(2a). See WIS. STAT. § 227.10(2) (stating no agency "may promulgate a rule which conflicts with state law").
¶ 31 Moreover, the PSC pamphlet, which the parties agree was provided to Zastrow pursuant to WIS. ADMIN. CODE § PSC 113.0509(1) (June 2017),[9] is merely informational and only purports to provide an "overview" of the condemnation process. As such, the pamphlet is not an agency rule and does not have the force of law. See WIS. STAT. § 227.01(13)(r) (excluding from the definition of an agency rule "a pamphlet or other explanatory material that is not intended or designed as interpretation of legislation enforced or administered by an agency, but which is merely informational in nature"). For this additional reason, we reject Zastrow's argument that the pamphlet, in and of itself, required ATC to negotiate with Zastrow regarding vegetation management.
III. ATC did not violate WIS. STAT. § 32.29.
¶ 32 Zastrow also argues ATC violated WIS. STAT. § 32.29 by making false statements regarding its obligation to negotiate. Section 32.29 prohibits a condemnor from "intentionally mak[ing] or caus[ing] to be made a statement which he or she knows to be false to any owner of property concerning the condemnation of such property."
¶ 33 Zastrow first argues that ATC's response to Data Request No. 05.04 violated WIS. STAT. § 32.29. As noted above, in response to that request, ATC stated it would provide landowners with copies of a PSC-authored pamphlet, which described what landowners could "expect" regarding vegetation management. Zastrow argues that statement was false because the pamphlet stated landowners "have the right to negotiate for terms in the easement contract that will avoid or reduce the line's impact on their land" and the utility "has an obligation to negotiate," but ATC later refused to negotiate regarding vegetation management.
¶ 34 Zastrow's argument in this regard ignores the plain language of WIS. STAT. § 32.29. That statute prohibits a condemnor from intentionally making a false statement "to any owner of property concerning the condemnation of such property." Sec. 32.29 (emphasis added). Here, ATC provided the PSC with its response to Data Request No. 05.04. Thus, even assuming ATC intentionally gave a false response to that request, doing so would not have violated § 32.29.[10] Moreover, as discussed above, ATC informed the PSC in response to a different data request that it did not generally negotiate regarding vegetation management.
¶ 35 Zastrow also argues that ATC violated WIS. STAT. § 32.29 by providing her with the PSC-authored pamphlet discussed above. She contends that, if ATC in fact had no duty to negotiate regarding vegetation management, the pamphlet's *832 statement that ATC had an "obligation to negotiate" was false. However, any false statement in the pamphlet was attributable to the PSC, which prepared the pamphlet, not ATC. It is undisputed that ATC was required by law to provide the pamphlet to Zastrow. See WIS. ADMIN. CODE § PSC 113.0509(1) (June 2017). It is further undisputed that ATC fulfilled its responsibility in that regard. We therefore reject Zastrow's argument that ATC violated § 32.29 by providing her with the pamphlet.
¶ 36 Finally, we observe that, although Zastrow argues ATC violated WIS. STAT. § 32.29, she does not develop any argument that ATC's alleged violation of that statute, in and of itself, gave rise to a duty to negotiate in good faith regarding vegetation management. Section 32.29 is a criminal statute. A person who violates the statute "shall be fined not less than $50 nor more than $1,000, or imprisoned for not more than one year in the county jail or both." Sec. 32.29. Regardless of whether a violation of § 32.29 constitutes bad faith, as argued by Zastrow, nothing in the plain language of the statute suggests it has any relation to a utility's duty to negotiate under WIS. STAT. § 32.06(2a), and Zastrow has not cited any legal authority in support of that proposition. Zastrow's lack of a developed argument on this point further supports our rejection of her argument regarding § 32.29. See State v. Pettit , 171 Wis.2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments or arguments unsupported by references to legal authority).
IV. Zastrow may not use the instant lawsuit as a means of indirectly challenging the PSC's failure to include vegetation management conditions in the Certificate.
¶ 37 As discussed at length above, Zastrow has framed the instant lawsuit as a challenge to ATC's duty to negotiate in good faith under WIS. STAT. § 32.06(2a). However, it is clear from Zastrow's filings-both in the circuit court and on appeal-that she is actually attempting to indirectly challenge the PSC's determination that it was not necessary to include specific vegetation management conditions-including those Zastrow proposed-in the Certificate.
¶ 38 In her original complaint, Zastrow alleged that ATC had failed to negotiate in good faith regarding vegetation management by "[d]emanding un-needed rights to cut trees and other foliage on [Zastrow's] land." (Emphasis added.) In her amended complaint, Zastrow similarly alleged that the property interests ATC sought to take "exceed[ed] the scope necessary to meet the approved public purpose for the taking." (Emphasis added.) She also alleged that ATC had refused to consider negotiating "an alternative set of rights sufficient to protect and maintain" ATC's transmission lines. (Emphasis added.) In a similar vein, Zastrow argues on appeal that "no necessity exists" for the vegetation management terms in ATC's proposed easement contract.
¶ 39 The crux of these allegations is that the vegetation management rights in the proposed easement contract are unnecessary, and different vegetation management terms would adequately protect ATC's interests. However, the PSC was aware of the parties' dispute regarding the necessity of particular vegetation management conditions when it issued the Certificate. See supra ¶8. It nevertheless issued the Certificate without any specific vegetation management conditions. Moreover, it expressly determined that the vegetation management conditions Zastrow had proposed were "unreasonable, not necessary *833 or inconsistent with the conditions proposed in other similar transmission cases."
¶ 40 Zastrow did not seek judicial review of the PSC's decision. See Clean Wis., Inc. v. PSC , 2005 WI 93, ¶ 35, 282 Wis.2d 250, 700 N.W.2d 768 (noting the PSC's issuance of a certificate of public convenience and necessity is reviewable under WIS. STAT. § 227.52 ). As such, she has forfeited her right to challenge the PSC's determination that it was not necessary to impose specific vegetation management conditions in the Certificate. "Administrative action for which a statutory means of review is provided should not be subject to collateral attack in a different forum or under different procedures." Sewerage Comm'n of City of Milwaukee v. DNR , 102 Wis.2d 613, 631, 307 N.W.2d 189 (1981). We therefore reject Zastrow's current attempt to indirectly attack the PSC's failure to include specific vegetation management conditions in the Certificate, under the guise of challenging ATC's failure to engage in good faith negotiation regarding vegetation management.
By the Court. -Judgment affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

On appeal, ATC argues in the alternative that, even if it was required to negotiate in good faith regarding issues other than compensation, the undisputed facts show that it negotiated in good faith with Zastrow regarding vegetation management. Because we conclude ATC had no duty to negotiate in good faith regarding vegetation management, we need not address this alternative argument. See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis.2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

Zastrow also alleged that ATC had failed to negotiate in good faith regarding the width of the easement. However, she has abandoned that argument on appeal, and we therefore do not address it further.

Zastrow's lawsuit was consolidated with a separate lawsuit raising identical issues, which was filed against ATC by Zastrow's neighbors, Richard and Amy Popp. The circuit court's judgment dismissing Zastrow's complaint also dismissed the Popps' complaint. The Popps have not appealed the circuit court's decision, and we therefore do not discuss them further.

Although Wis. Stat. § 32.06(2a) does not use the term "good faith," courts have interpreted that subsection as requiring good faith negotiation by the condemnor. See Klemm v. American Transmission Co. , 2011 WI 37, ¶ 35 n.16, 333 Wis.2d 580, 798 N.W.2d 223 (citing Warehouse II, LLC v. DOT , 2006 WI 62, ¶ 5, 291 Wis.2d 80, 715 N.W.2d 213 ).

This is an issue of first impression. While ATC correctly observes that no Wisconsin appellate court has "extended the duty to negotiate in Wis. Stat. § 32.06(2a) to subjects other than compensation," it does not appear that any appellate court has yet been asked to address that issue.

"Although the title of a statute is not part of the law, Wis. Stat. § 990.001(6), it may help in resolving statutory interpretation questions." State v. Matasek , 2014 WI 27, ¶ 37 n.22, 353 Wis.2d 601, 846 N.W.2d 811.

Our conclusion that Zastrow cannot prevail on a claim under Wis. Stat. § 32.06(5) that is premised on ATC's alleged failure to negotiate regarding issues other than compensation does not render § 32.06(5) superfluous. Landowners may still bring claims under that subsection related to issues other than the amount of compensation, as long as those claims are not based on a condemnor's failure to negotiate in good faith regarding noncompensation issues. For instance, when a condemning authority, as opposed to the PSC, determines the necessity of a taking, that determination is subject to judicial review under § 32.06(5). See Grunwald v. Community Dev. Auth. of City of W. Allis , 202 Wis.2d 471, 480, 551 N.W.2d 36 (Ct. App. 1996). In addition, § 32.06(5)"sets out the proper and exclusive way for a property owner to raise a claim that the owner will be left with an uneconomic remnant after a partial taking by the condemnor." Waller v. American Transmission Co. , 2013 WI 77, ¶ 6, 350 Wis.2d 242, 833 N.W.2d 764.

Wisconsin Admin. Code § PSC 113.0509(1) (June 2017) is identical to the version that applied during the negotiation period in this case.

Zastrow asserts, in passing, that the PSC's discovery rules incorporate Wisconsin's civil discovery rules, which disallow false answers. Be that as it may, Zastrow does not develop an argument explaining why ATC's alleged violation of a discovery rule would result in the imposition of a requirement that ATC negotiate in good faith regarding vegetation management, contrary to the plain language of Wis. Stat. § 32.06(2a).