**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 6, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1968**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV128

IN COURT OF APPEALS
DISTRICT III

SIERRA CLUB AND VOTE SOLAR,

PETITIONERS-APPELLANTS,

V.

PUBLIC SERVICE COMMISSION OF WISCONSIN,

RESPONDENT-RESPONDENT,

MADISON GAS & ELECTRIC,

INTERESTED PARTY-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: NIA E. TRAMMELL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Sierra Club and Vote Solar (hereinafter, Sierra Club) appeal from an order affirming the Public Service Commission of Wisconsin's

(PSC) approval of a settlement agreement that allowed Madison Gas and Electric (MGE) to set its fixed utility rates at specific amounts greater than those suggested by Sierra Club. On appeal, Sierra Club argues that the PSC's decision should be reversed on two grounds.

¶2      First, Sierra Club argues that the PSC's ratemaking decision was based on the agency's "legislative policy" that was not properly subject to the rulemaking process. In particular, Sierra Club asserts that under this "policy," the PSC permitted public utility companies to set fixed charges that covered more than the costs from meter reading, billing, and utility connection. Second, Sierra Club contends that the PSC's decision violated Wisconsin's Energy Priorities Law (EPL). *See* WIS. STAT. §§ 1.12(4), 196.025(1) (2021-22).[1]

¶3      We first conclude that the PSC's ratemaking decisions are not rules and, therefore, are not subject to the rulemaking process outlined in WIS. STAT. ch. 227. Under WIS. STAT. § 227.01(13), a "[r]ule" is defined as "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." Crucial to this opinion, a rule "does not include, and [§] 227.10 does not apply to, any action or inaction of an agency, whether it would otherwise meet the definition under this subsection, that" "[f]ixes or approves rates, prices or charges, unless a statute specifically requires them to be fixed or approved by rule." Sec. 227.01(13)(n). In this case, the PSC's

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

decision involved approving MGE's fixed rates pursuant to WIS. STAT. §§ 196.026(7)(c) and 196.03(1), neither of which requires rates to be fixed or approved by rule. Thus, no statute requiring a rule was implicated, negating the need for the rulemaking process.

¶4     We next conclude that the PSC's decision did not violate the EPL, which requires the PSC to apply the energy priorities listed in WIS. STAT. § 1.12(4) to ratemaking "to the extent cost-effective, technically feasible and environmentally sound." *See id.*; WIS. STAT. § 196.025(1)(ar). The PSC determined that the fixed rates suggested in the settlement agreement were both "just and reasonable" and encouraged "[e]nergy conservation and efficiency." *See* WIS. STAT. §§ 196.026(7)(c), 1.12(4). The PSC's factual determinations are supported by substantial evidence. We therefore affirm the circuit court's order upholding the PSC's decision.

## BACKGROUND

¶5     The underlying facts in this case are not in dispute. MGE is an electric and natural gas public utility company. *See* WIS. STAT. § 196.01(5)(a). The PSC is an executive branch agency primarily tasked with supervising and regulating "every public utility in this state and" doing "all things necessary and convenient to its jurisdiction." WIS. STAT. § 196.02(1).

¶6     In 2021, MGE applied to the PSC for, among other things, permission to increase its electric and natural gas rates. The PSC issued a notice of proceeding to consider MGE's application. A number of organizations, including Sierra Club, requested and were granted intervention. Shortly thereafter, the parties submitted a proposed settlement agreement to the PSC; however, Sierra Club opposed certain aspects of the agreement. *See* WIS. STAT. § 196.026.

In particular, Sierra Club objected to a part of the agreement permitting MGE to set "fixed charges" for residential electric service at $17 per month in 2022 and $15 per month in 2023, and residential gas service at $21.88 per month.[2]

¶7      Sierra Club argued that the fixed charge proposals were "based on" PSC's "legislative policy" enacted in 2012, "whereby [the PSC] … approve[s] fixed charges that include 'minimum system' distribution costs—a portion of the costs of poles, wires, transformers, and gas mains—in the fixed charge." Sierra Club contended that prior to the 2012 policy, the PSC "determined that a reasonable fixed charge should be no greater than an amount to recover meter readings, billing, and connection costs."   According to Sierra Club, the PSC's adoption of the change was a "legislative function," and the agency failed to adopt the change through the rulemaking process.  Sierra Club also argued that adopting the fixed charge proposals would violate the EPL.  *See* WIS. STAT. §§ 1.12(4), 196.025(1).

¶8      The PSC held public hearings as well as a "technical hearing" on the proposed fixed rate increases.  Following the hearings, the PSC issued its final decision approving the settlement agreement as proposed.  Citing WIS. STAT.

---

[2] A "fixed charge" comprises the portion of a utility bill that is static and does not depend on customer energy usage.  The other portion of a utility bill is considered the "volumetric charge," which depends on customer energy usage.

Sierra Club contends that "the larger the portion of" a customer's "bill that depends on [his or her] energy consumption, and [the] lower the portion reflected by a fixed charge, the more [he or she] engage[s] in more energy conservation, efficiency, and rooftop solar."

We note that there is nothing in the record suggesting Vote Solar was one of the organizations that requested intervention or that Vote Solar took a position on the settlement agreement prior to the petition for judicial review filed in the circuit court.  Therefore, any reference to Sierra Club's actions prior to the circuit court petition for review relate solely to Sierra Club.

§ 227.01(13)(n), the PSC concluded that "ratemaking orders are not … rule[s] and are therefore exempt from rulemaking." The PSC also concluded that the fixed rates would not violate the EPL, and it reasoned that "[w]hile rate design is certainly a tool to advance the important priorities set forth in the EPL, the [PSC] must use that tool in a manner that is consistent with other public policy goals and objectives involved in setting utility rates," including ensuring that rates are "reasonable and just." *See* WIS. STAT. § 196.03(1). Ultimately, the PSC concluded that there was "sufficient evidence in the record to approve the fixed charges proposed" in the settlement agreement.

¶9 The circuit court affirmed the PSC's decision. This appeal follows.[3]

## DISCUSSION

¶10 Sierra Club appeals from the circuit court's decision pursuant to WIS. STAT. § 227.58. On such an appeal, we review the decision of the agency, not the circuit court. *See* **Myers v. DNR**, 2019 WI 5, ¶17, 385 Wis. 2d 176, 922 N.W.2d 47. When reviewing questions of fact decided by an agency, we will not "substitute [our] judgment for that of the agency as to the weight of the evidence on any disputed finding of fact." WIS. STAT. § 227.57(6). However, we will "set aside agency action or remand the case to the agency" if we conclude that "the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." *Id.* "An agency's findings are supported by substantial evidence if a reasonable person could arrive at the same conclusion as the

---

[3] This appeal is venued in this court pursuant to WIS. STAT. § 752.21(2).

5

agency." ***Clean Wis., Inc. v. PSC***, 2005 WI 93, ¶46, 282 Wis. 2d 250, 700 N.W.2d 768.

¶11 Conversely, "[w]hen reviewing questions of law decided by an agency, including statutory interpretation, our review is de novo." ***DOR v. Microsoft Corp.***, 2019 WI App 62, ¶13, 389 Wis. 2d 350, 936 N.W.2d 160 (citation omitted). Although we afford no deference to an agency's interpretation of law, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." WIS. STAT. § 227.57(10), (11); ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶¶3, 78, 382 Wis. 2d 496, 914 N.W.2d 21 (stating that due weight "is a matter of persuasion, not deference").

¶12 "[S]tatutory interpretation 'begins with the language of the statute.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). Context and statutory structure are similarly important to statutory interpretation. ***Id.***, ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***

## I.    Jurisdiction

¶13    The PSC first contends that we should not reach the merits of Sierra Club's appeal because this court lacks "subject matter jurisdiction."[4] According to the PSC, it began implementing the change in its ratemaking procedure in 2012.  Given that the statutory time frame for filing a petition for judicial review of that course of action has long passed, the PSC asserts that Sierra Club is impermissibly attempting to "collaterally attack past [PSC] decisions." *See Zastrow v. American Transmission Co.*, 2018 WI App 51, ¶40, 383 Wis. 2d 644, 916 N.W.2d 821 (concluding that a party "forfeited" a challenge to an agency's decision because a petition for judicial review was not timely filed).

¶14    Pursuant to the Wisconsin Constitution, "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶8, 273 Wis. 2d 76, 681 N.W.2d 190 (citation omitted); WIS. CONST. art. VII, § 8.  Also, WIS. STAT. ch. 227 "grants

---

[4] In addition to challenging this appeal on jurisdictional grounds, the PSC asserts on appeal that Sierra Club lacks standing to challenge the PSC's decision.  Because we ultimately rule in the PSC's favor, we assume without deciding that Sierra Club has standing to challenge the decision.  *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (stating that "we decide cases on the narrowest possible grounds").  For the same reason, to the extent the PSC means to argue that Sierra Club should be equitably estopped from challenging the PSC's decision because the policy change leading to that decision occurred in 2012, *see Milas v. Labor Ass'n of Wis.*, 214 Wis. 2d 1, 11, 571 N.W.2d 656 (1997), we assume without deciding that principles of equitable estoppel do not prevent Sierra Club's challenge, *see Patrick Fur Farm*, 286 Wis. 2d 774, ¶8 n.1.

Separately, we note that the PSC's briefing on appeal does not comply with WIS. STAT. RULE 809.19(8)(bm), which states that "[a] brief … must have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court explained when it amended the rule in 2021 that the pagination requirements avoid "the confusion of having two different page numbers" on certain pages of an electronically filed brief.  S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).  We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

subject matter jurisdiction to all circuit courts to review administrative decisions of the type specified in that chapter." *Ceria M. Travis Acad., Inc. v. Evers*, 2016 WI App 86, ¶22, 372 Wis. 2d 423, 887 N.W.2d 904 (citation omitted); WIS. STAT. § 227.52. However, a party's failure to comply with a procedural statute may limit a circuit court's "competency" to exercise its jurisdiction. *Mikrut*, 273 Wis. 2d 76, ¶9.

¶15 The circuit court unquestionably had subject matter jurisdiction over Sierra Club's WIS. STAT. ch. 227 action pursuant to the Wisconsin Constitution and ch. 227. Furthermore, the PSC has provided no compelling authority demonstrating that Sierra Club failed to comply with ch. 227 in seeking judicial review of the PSC's December 2021 decision.[5] Thus, the court also had

---

[5] This court held in *Zastrow v. American Transmission Co.*, 2018 WI App 51, ¶40, 383 Wis. 2d 644, 916 N.W.2d 821, that an "[a]dministrative action for which a statutory means of review is provided should not be subject to collateral attack in a different forum or under different procedures." The PSC contends that *Zastrow* stands for the proposition that Sierra Club cannot, approximately ten years later, indirectly attack the PSC's ratemaking formula.

In *Zastrow*, an individual filed a lawsuit pursuant to WIS. STAT. ch. 32 ("Eminent domain") challenging a company's "right to condemn her property." *Zastrow*, 383 Wis. 2d 644, ¶1. Prior to the lawsuit, the PSC issued a certificate of public convenience and necessity to the company, which the individual did not challenge pursuant to WIS. STAT. ch. 227. *Zastrow*, 383 Wis. 2d 644, ¶¶2, 40. We concluded that, "while framed as a challenge" under ch. 32, the individual's lawsuit was "actually an attempt to indirectly challenge" the PSC's failure to include specific conditions in the certificate. *Zastrow*, 383 Wis. 2d 644, ¶2. Because the individual did not challenge the PSC's certificate under ch. 227, we determined that the individual forfeited her challenge to the PSC's decision. *Zastrow*, 383 Wis. 2d 644, ¶40.

Sierra Club is not indirectly challenging the PSC's December 2021 decision "in a different forum or under different procedures." *See id.* Rather, Sierra Club timely filed a challenge to that decision through WIS. STAT. ch. 227. Further, as Sierra Club argues in reply, while the PSC's prior implementation of the policy may have been in error, that fact "does not insulate its decision in this case from judicial review." Therefore, Sierra Club has not forfeited its challenge to the PSC's December 2021 decision, and *Zastrow*'s holding discussed above does not apply. We also note that the PSC does not argue that Sierra Club was required to challenge the decision as a "rule" pursuant to a declaratory judgment action under WIS. STAT. § 227.40. *See Citizens for Sensible Zoning, Inc. v. DNR*, 90 Wis. 2d 804, 813-14, 280 N.W.2d 702 (1979).

competency to hear Sierra Club's challenge. *See* WIS. STAT. § 227.53 (listing the procedural requirements to initiate judicial review of an administrative decision); *see also **Currier v. DOR***, 2006 WI App 12, ¶6 n.2, 288 Wis. 2d 693, 709 N.W.2d 520 ("[T]he failure to comply with mandatory time limits in ch. 227 would result in the loss of the circuit court's competency to proceed.").

¶16     As to this court, the Wisconsin Constitution "permits the legislature to grant appellate jurisdiction to the court of appeals." ***State ex rel. Swan v. Elections Bd.***, 133 Wis. 2d 87, 91, 394 N.W.2d 732 (1986). The legislature has done so in WIS. STAT. § 808.03(1), which provides that a final judgment or order of the circuit court may be appealed to this court as a matter of right. More specifically, in an action challenging an administrative agency's decision, "[a]ny party, including the agency, may secure a review of the final judgment of the circuit court by appeal to the court of appeals." WIS. STAT. § 227.58.

¶17     Accordingly, this court has subject matter jurisdiction to hear Sierra Club's appeal from the circuit court's decision, pursuant to the Wisconsin Constitution, WIS. STAT. § 808.03(1), and WIS. STAT. ch. 227.

## II.     Fixed charges

### A.  The fixed-charge policy change was a not a rule.

¶18     As noted above, Sierra Club asserts that the PSC's policy prior to 2012 was to limit fixed charges for electrical and gas service to costs such as meter reading, billing, and connection costs. According to Sierra Club, however, in 2012, PSC adopted a new policy that permitted fixed charges to cover other aspects of providing utility services, including administrative and general costs. Sierra Club argues that this new policy constituted a rule that was required to be

promulgated under WIS. STAT. § 227.10(1). Sierra Club therefore asks this court to vacate the PSC's decision approving the fixed rates set forth in the settlement agreement and to order the PSC to "apply its original policy of limiting fixed charges to customer costs unless and until it changes that policy through rulemaking."

¶19 "Each agency shall promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute." WIS. STAT. § 227.10(1). However, an agency's

> statement of policy or an interpretation of a statute made in the decision of a contested case … or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts does not render it a rule or constitute specific adoption of a rule and is not required to be promulgated as a rule.

*Id.* We refer to this provision as the "contested case clause."

¶20 A "[r]ule" is defined in WIS. STAT. § 227.01(13) as "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." *See also **Citizens for Sensible Zoning, Inc. v. DNR***, 90 Wis. 2d 804, 814, 280 N.W.2d 702 (1979).

¶21 In addition to defining the term "[r]ule," WIS. STAT. § 227.01(13) "also contains 72 specific exemptions from" that definition. ***Wisconsin Legislature v. Palm***, 2020 WI 42, ¶30, 391 Wis. 2d 497, 942 N.W.2d 900 (citing § 227.01(13)(a)-(zz)). As is relevant here, a rule "does not include, and [WIS. STAT. §] 227.10 does not apply to, any action or inaction of an agency, whether it

would otherwise meet the definition under this subsection, that" "[i]s a decision or order in a contested case," § 227.01(13)(b); that "[i]s an order directed to a specifically named person or to a group of specifically named persons that does not constitute a general class, and which is served on the person or persons to whom it is directed by the appropriate means applicable to the order," § 227.01(13)(c); or that "[f]ixes or approves rates, prices or charges, unless a statute specifically requires them to be fixed or approved by rule," § 227.01(13)(n).[6]

¶22     The PSC "has jurisdiction to supervise and regulate every public utility in this state and to do all things necessary and convenient to its jurisdiction," including approving utility rates.  *See* WIS. STAT. §§ 196.02(1), 196.20.  A public utility company, like MGE, must seek approval and permission from the PSC for a rate schedule change, and "no change in schedules which constitutes an increase in rates to consumers may be made except by order of the [PSC], after an investigation and opportunity for a hearing." *See* § 196.20(1), (2m).

¶23     A charge made by any public utility company for "any heat, light, water, telecommunications service or power produced, transmitted, delivered or furnished or for any service rendered or to be rendered in connection therewith shall be *reasonable and just*."  *See* WIS. STAT. § 196.03(1) (emphasis added). Relevant here, all parties to proceedings before the PSC "are encouraged to enter into settlements when possible."  WIS. STAT. § 196.026(1).  The PSC may approve

---

[6] "Whether an agency's action constitutes a 'rule' under WIS. STAT. § 227.01(13) presents a question of law, which we review de novo." *Lamar Cent. Outdoor, LLC v. Division of Hearings & Appeals*, 2019 WI 109, ¶10, 389 Wis. 2d 486, 936 N.W.2d 573 (citation omitted).

a settlement agreement only after, among other things, it "finds that the settlement agreement … complies with applicable law, including that any rates resulting from the settlement agreement are *just and reasonable*."  Sec. 196.026(7)(c) (emphasis added).

¶24    According to Sierra Club, the PSC's decision changing how it calculated fixed charges is subject to rulemaking procedures under ***Lamar Central Outdoor, LLC v. Division of Hearings & Appeals***, 2019 WI 109, 389 Wis. 2d 486, 936 N.W.2d 573, because its decision requires an interpretation of the ambiguous term "reasonable and just" in WIS. STAT. § 196.03(1).  *See also* WIS. STAT. § 196.026(7)(c).

¶25    In ***Lamar***, a billboard company purchased a billboard built in the 1990s.  ***Lamar***, 389 Wis. 2d 486, ¶2.  At the time of its construction, the billboard complied with all applicable laws.  *Id.*  By the 2000s, however, the billboard's status changed to "legal, nonconforming" because the applicable laws were amended and "no longer allow[ed] the [b]illboard where it [was] located." *Id.*, ¶4.

¶26    After purchasing the billboard, the billboard company applied to the Wisconsin Department of Transportation (DOT) for permission to remove vegetation that partially obscured the billboard.  *Id.*, ¶3.  During the application process, the DOT discovered that the billboard had been installed with a temporary extension panel that increased the billboard's total advertising area. *Id.* The panel had been removed several years before the application process. *Id.*  The DOT claimed that "legal, nonconforming" billboards may not be enlarged and, if one is enlarged, it becomes "illegal" and is subject to removal regardless of whether the billboard's owner attempts to "cure" the violation. *Id.*, ¶¶5, 12.  On

12

this basis, the DOT denied the application and, shortly thereafter, sent the billboard company an order requiring it to remove the billboard. *Id.*, ¶¶5-6.

¶27    The DOT's "position on the consequences of temporary violations of a 'legal, nonconforming' sign's permit" had "morphed over the years" based on the agency's interpretation of WIS. STAT. § 84.30 ("Any sign erected … in violation of this section or the rules promulgated under this section, may be removed … *unless such sign is brought into conformance within said 60 days*." (emphasis added)). *Lamar*, 389 Wis. 2d 486, ¶12.  According to the DOT, the billboard company could not bring the billboard into conformance because the change in law from the 1990s prohibiting the sign in that location made compliance "impossible." *Id.*  However, the DOT's changed interpretation of § 84.30 was not made through the rulemaking process. *Lamar*, 389 Wis. 2d 486, ¶16.

¶28    On appeal, the DOT relied on the contested case clause to argue that it could adopt and apply a new reasonable statutory interpretation in the contested case without going through the rulemaking process. *Id.*  Our state supreme court noted that the DOT's changed position regarding the consequences of temporary violations of "legal, nonconforming" signs was "not necessarily problematic." *Id.*, ¶11.  The court stated:

> It is to be expected that an administrative agency might, from time to time, change the manner in which it applies and enforces our State's statutes and regulations. Sometimes a prudential reordering of priorities or other discretionary factors prompt the change.  But sometimes the change arises from a reevaluation of what the agency believes a particular statute or regulation requires.

13

*Id.* According to the court, the DOT's changed interpretation of an ambiguous statute implicated the latter of these situations, which required the agency to go through the rulemaking process. *Id.*, ¶¶11, 23, 38.

¶29 The supreme court articulated that the contested case clause "merely recognizes that, in resolving specific matters, agency decisions will often contain—but not create—a statement of policy, or interpretation of a statute as applied to the matter at hand, and that they need not adopt a new rule for each specific matter they resolve." *Id.*, ¶23. However, the contested case clause "does not say that an agency need not promulgate a rule embodying the new interpretation of an ambiguous statute before implementing it in a specific case." *Id.* In other words, an agency cannot "wait for a contested case or some other resolution of a specific matter before announcing [a] new interpretation" of an ambiguous statute in order to escape the rulemaking process. *Id.*, ¶22. Nor can an agency announce a new interpretation of an ambiguous statute prior to a contested case or resolution of a specific matter and then apply that interpretation in such case in order to escape the rulemaking process. *See id.*

¶30 Sierra Club concedes that "*Lamar* does not require the PSC to conduct all ratemaking by rulemaking. The PSC remains free to conduct the fact-intensive analysis involved in setting rates on a case-by-case basis by applying existing law." Sierra Club asserts, however, that *Lamar* does not allow the PSC to "use the vehicle of a specific rate case to circumvent rulemaking by announcing a new policy or reinterpreting the ambiguous statutory phrase 'reasonable and just.'" In response, the PSC claims, among other things, that its interpretation and application of "reasonable and just" did not require it to go through the rulemaking process because, unlike the DOT's decision in *Lamar*, its

decision in this case was not a "rule" as that term is defined in WIS. STAT. § 227.01(13).

¶31 We agree with the PSC that it did not engage in rulemaking through its decision at issue because a rule "does not include, and [WIS. STAT. §] 227.10 does not apply to, any action or inaction of an agency, whether it would otherwise meet the definition under this subsection, that" "[f]ixes or approves rates, prices or charges, unless a statute specifically requires them to be fixed or approved by rule."[7] *See* WIS. STAT. § 227.01(13)(n). It is undisputed that the PSC's decision involved approving rates pursuant to WIS. STAT. §§ 196.026(7)(c) and 196.03(1). Neither §§ 196.026(7)(c) nor 196.03(1) specifically require the PSC to promulgate by rule the meaning of "reasonable and just" rates. Moreover, Sierra Club has failed to cite to "a statute [that] specifically requires" rates "to be fixed or approved by rule." *See* § 227.01(13)(n).

¶32 Instead of citing to "a statute [that] specifically requires" rates "to be fixed or approved by rule," *see* WIS. STAT. § 227.01(13)(n), Sierra Club asserts that "the non-rulemaking agency actions identified in § 227.01(13)[] are not exceptions to WIS. STAT. § 227.10," but rather "[t]hey are types of action covered by" the contested case clause. According to Sierra Club, the holding in *Lamar* therefore applies to the contested case clause as well as the list of exemptions listed in § 227.01(13).

---

[7] The PSC also argues that its approval of the settlement agreement was not a rule because WIS. STAT. § 227.01(13)(b) and (c) apply. Because we conclude that § 227.01(13)(n) applies to the PSC's decision, we need not address the applicability of paragraphs (b) and (c). *See Patrick Fur Farm*, 286 Wis. 2d 774, ¶8 n.1. For the same reason, we do not need to determine whether WIS. STAT. §§ 196.03(1) or 196.026(7)(c) are ambiguous. *See Lamar*, 389 Wis. 2d 486, ¶38.

¶33    Sierra Club's interpretation of WIS. STAT. §§ 227.10 and 227.01(13) has no basis in law. Section 227.01(13) expressly states that a "[r]ule does not include" any agency action or inaction listed in § 227.01(13)(a)-(zz) and that § 227.10 "does not apply to" such action or inaction. *See Cholvin v. DHFS*, 2008 WI App 127, ¶30, 313 Wis. 2d 749, 758 N.W.2d 118 (stating § 227.01(13)(r) "provides that a statement that might otherwise come within the definition of a rule is not subject to formal rule-making requirements"). Because the rulemaking requirements in § 227.10 do not apply to the exemptions listed in § 227.01(13)(a)-(zz), the contested case clause does not apply to the exemptions either. Therefore, we reject Sierra Club's assertion that § 227.01(13)(n) is a type of action subject to the contested case clause.

¶34    Nothing in *Lamar* alters this conclusion. In that case, the DOT did not argue that any of the exemptions listed in WIS. STAT. § 227.01(13)(a)-(zz) applied, and the court did not address that issue.[8] Accordingly, the legislature

---

[8] Without authoritative support, Sierra Club contends that the supreme court in *Lamar* "would have upheld the DOT's position" "[i]f WIS. STAT. § 227.01(13)(b) and (c) allowed the DOT to change policy outside rulemaking—as the PSC argues § 227.01(13)(n) does." We deem this argument to be undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). The DOT did not argue that § 227.01(13)(b) or (c) applied, and the court made clear that its holding applied only to the contested case clause when an agency interprets an ambiguous statute. *See Lamar*, 389 Wis. 2d 486, ¶23 n.11.

(continued)

16

delegated to the PSC the authority to weigh discretionary factors in the manner in which it applies and enforces WIS. STAT. §§ 196.03(1) and 196.026(7)(c) without requiring the agency to go through the rulemaking process.[9]  *See **Lamar***, 389 Wis. 2d 486, ¶11.

### B. The PSC did not violate the EPL.

¶35      Lastly, Sierra Club argues that the PSC's decision violated the EPL because the PSC "could have incentivized greater conservation, efficiency, and

---

In addition, we decline to address Sierra Club's argument that, in order to avoid an unconstitutional delegation of authority to the PSC, we must conclude that the agency was required to promulgate a rule for its interpretation of the phrase "reasonable and just." As MGE argues, Sierra Club's non-delegation arguments are supported only by general statements and Sierra Club "merely recite[s] the proposition that some delegations of legislative authority are unconstitutional." The proper standard for a non-delegation analysis was articulated in *Palm*: A legislative delegation of its authority to make law to an administrative agency is allowed "if the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or agency acts within that legislative purpose." *Wisconsin Legislature v. Palm*, 2020 WI 42, ¶33, 391 Wis. 2d 497, 942 N.W.2d 900 (citation omitted). Sierra Club fails to develop an argument as to why the PSC's authority to assess and enforce what is a "reasonable and just" utility rate is an improper delegation of the legislature's authority under the standard articulated in *Palm*. *See **Pettit***, 171 Wis. 2d at 646-47.

[9] This conclusion is supported by the complex and largely case-by-case discretionary analysis that goes into the PSC's ratemaking. *See **City of West Allis v. PSC***, 42 Wis. 2d 569, 577-78, 167 N.W.2d 401 (1969) ("It follows that rate-making agencies are not bound to the service of any single regulatory formula; they are permitted, unless their statutory authority otherwise plainly indicates, 'to make the pragmatic adjustments which may be called for by particular circumstances.'" (citation omitted)); ***Madison Gas & Elec. Co. v. PSC***, 109 Wis. 2d 127, 136, 325 N.W.2d 339 (1982) ("The PSC has considerable discretion in determining the factors upon which it bases its rate orders."); ***Wisconsin Tel. Co. v. PSC***, 232 Wis. 274, 329, 287 N.W. 122 (1939) ("[I]t is apparent that there is more than one rate that may be a just and reasonable rate. It is the function of the [PSC] to determine the just and reasonable rate which shall apply in a given situation."); ***Wisconsin's Env. Decade, Inc. v. PSC***, 98 Wis. 2d 682, 696, 298 N.W.2d 205 (Ct. App. 1980) (stating that the "methods for computing precise cost allocation and differential figures are complex"). Ratemaking involves: (1) developing a public utility's revenue requirement (i.e., how much revenue the utility needs to cover its expenses, plus a reasonable level of return on its invested capital); (2) developing and analyzing cost-of-service models so that the utility's future sales will produce income equal to the revenue requirement; and (3) developing a rate design. *See **Wisconsin Pub. Serv. Corp. v. PSC***, 109 Wis. 2d 256, 259 n.2, 325 N.W.2d 867 (1982) (detailing the PSC's ratemaking process).

17

solar generation by setting fixed charges at $8.70 per month."[10]  Sierra Club contends that when the PSC "has a choice between two rate designs, the [EPL] requires the PSC to choose lower fixed charges that produce more customer conservation, efficiency, and solar adoption."

¶36    "The EPL states Wisconsin's energy policy and gives agencies and governmental units a list of energy source options and the priority in which they should be considered when making decisions." ***Clean Wis.***, 282 Wis. 2d 250, ¶98. It provides, "to the extent cost-effective, technically feasible and environmentally sound, the [PSC] shall implement the priorities under [WIS. STAT. §] 1.12(4) in making all energy-related decisions and orders, including … rate setting."  WIS. STAT. § 196.025(1)(ar).  Section 1.12(4) states:

> In meeting energy demands, the policy of the state is that, to the extent cost-effective and technically feasible, options be considered based on the following priorities, in the order listed:
>
> (a) Energy conservation and efficiency.
>
> (b) Noncombustible renewable energy resources.
>
> (c) Combustible renewable energy resources.
>
> (cm) Advanced nuclear energy using a reactor design or amended reactor design approved after December 31, 2010, by the U.S. Nuclear Regulatory Commission.
>
> (d) Nonrenewable combustible energy resources, in the order listed:

---

[10] The PSC contends that the EPL does not apply to its decision because, pursuant to WIS. STAT. § 196.025(1)(b)1., the decision occurred "[i]n a proceeding in which an investor-owned electric public utility company is a party" and the PSC and MGE complied with the remaining requirements under that statute.  We decide this case on the narrowest possible grounds and therefore, we need not address this issue. *See **Patrick Fur Farm***, 286 Wis. 2d 774, ¶8 n.1.  Instead, we assume without deciding that the EPL applies to the PSC's decision in this case.

1. Natural gas.

2. Oil or coal with a sulphur content of less than 1 percent.

3. All other carbon-based fuels.

¶37 In other words, the PSC must apply the priorities listed in WIS. STAT. § 1.12(4) to ratemaking only "to the extent" a particular rate is "cost-effective, technically feasible and environmentally sound." *See id.*; WIS. STAT. § 196.025(1)(ar). As is relevant to ratemaking, the PSC applies the EPL in the context of determining whether a utility rate is "reasonable and just." *See Clean Wis.*, 282 Wis. 2d 250, ¶122; WIS. STAT. §§ 196.03(1), 196.026(7)(c). Thus, the relevant question for the PSC in the ratemaking context is: Given the requirements of §§ 196.03(1) and 196.026(7)(c), what is the highest priority energy option that is also cost-effective, technically feasible, and environmentally sound?[11] *See Clean Wis.*, 282 Wis. 2d 250, ¶122 & n.34. Our review of the

---

[11] Sierra Club contends that *Clean Wisconsin, Inc. v. PSC*, 2005 WI 93, ¶121, 282 Wis. 2d 250, 700 N.W.2d 768, does not stand for the proposition "that the PSC can 'weigh' the [EPL]'s mandate against the PSC's own policy preferences." As we will explain, we do not interpret the PSC's decision as disregarding the EPL in place of the agency's own policy preferences. By WIS. STAT. § 196.025(1)(ar)'s plain meaning, the PSC must comply with *both* its statutory ratemaking requirements and the requirements set forth in the EPL. To do so, the PSC must make a factual determination as to whether a particular rate would be reasonable and just and, then, to the extent cost-effective, technically feasible, and environmentally sound, apply the priorities listed in the EPL. *See* § 196.025(1)(ar); *Clean Wis.*, 282 Wis. 2d 250, ¶162 (concluding that "substantial evidence exist[ed] to support the various factual findings made by the PSC in applying the provisions of the EPL and" the other relevant statutory requirements at issue). To the extent Sierra Club disagrees with our interpretation of the EPL, we reject those arguments as they are contrary to the plain language in WIS. STAT. §§ 196.025(1)(ar) and 1.12(4).

(continued)

PSC's ratemaking decision, including the application of the priorities in § 1.12(4), is limited to whether the decision is "supported by substantial evidence in the record." *See* WIS. STAT. § 227.57(6); *Clean Wis.*, 282 Wis. 2d 250, ¶162.

¶38 Here, the PSC stated in its decision that the "fundamental obligation" in setting utility rates "is to set just and reasonable rates that ensure the adequate provision of utility service." MGE submitted with the settlement agreement hundreds of pages of rate calculations based on its revenue and costs of service. In turn, the PSC conducted its own studies, and its experts reached a fixed rate fifty-eight cents higher than that proposed in the settlement agreement. In simplified terms, the approved fixed-rate design covers "fixed costs" incurred by MGE. Sierra Club points to no evidence suggesting that these calculations were in error or that the ultimate figures approved for fixed charges were unreasonable. *See Clean Wis.*, 282 Wis. 2d 250, ¶46.

¶39 In addition, the PSC stated that it did not interpret the EPL as requiring the agency "to disconnect fixed charges from fixed costs." As that principle applied to the fixed charges in this case, the PSC found that implementing the EPL's priorities, such as noncombustible renewable energy

---

Sierra Club also asserted in its brief-in-chief that *Clean Wisconsin* is no longer good law because it relied on deference to the PSC's interpretation of the EPL. *See* WIS. STAT. § 227.57(11); *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21. MGE contends that the analysis in *Clean Wisconsin* cited in the body of this discussion—i.e., that the PSC must consider both the EPL and its other statutory duties in order "to gauge whether an option is cost effective or technically feasible"—"was independent of any PSC interpretation of the [EPL], and comports with the decades of cases evaluating rate structures." *See Clean Wis.*, 282 Wis. 2d 250, ¶162. Sierra Club does not respond to this argument, and we therefore deem it conceded. *See United Co-op v. Frontier FS Co-op*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (concluding that a lack of response in a reply brief to an argument made in a respondent's brief constitutes a concession). We also independently conclude that *Clean Wisconsin*'s holding comports with the plain meanings of the EPL and WIS. STAT. §§ 196.03(1) and 196.026(7)(c), for the reasons articulated earlier in this footnote.

resources, would not be cost-effective. Moreover, the PSC disagreed with Sierra Club that setting the fixed rates contained in the settlement agreement "would encourage customers to use more energy" in violation of the EPL. *See* WIS. STAT. § 1.12(4)(a). The PSC reasoned:

> Even though the amount of the fixed customer charge does have an incidental effect on certain energy efficiency measures and renewable energy resources, a substantial portion of a typical customer's bill will remain variable, even under the fixed charge levels to which the [s]ettling [p]arties agreed. Thus, the opportunity to encourage conservation efforts remains.

Ultimately, the PSC concluded that the "purpose of rate design is … to connect the rates customers pay to the costs the utility incurs. Connecting those costs to the rates customers pay encourages efficient utility scale planning."

¶40     Again, Sierra Club fails to demonstrate how or why the PSC's findings are unreasonable. *See **Clean Wis.***, 282 Wis. 2d 250, ¶46. Instead, Sierra Club asks this court to reweigh the factual evidence in the record, including the evidence submitted by Sierra Club that it contends demonstrates that lower fixed utility costs increase energy conservation. However, as required by statute, the PSC considered whether the fixed rates in the settlement agreement would be reasonable and just and then found that a lower rate would not be cost-effective.[12]

---

[12] Sierra Club asserts that "[t]here is no evidence in the record that a lower fixed charge … is not cost-effective, technically feasible or environmentally sound." We disagree. The record is replete with information on why a fixed charge rate design that incorporates costs other than those proposed by Sierra Club is arguably more cost-effective. For example, the PSC considered several cost-of-service studies (COSS). Sierra Club has failed to explain why the PSC's reliance on the COSS was in error or why the COSS results were incorrect.

¶41    Even so, the PSC determined that the settlement agreement's fixed rates would still encourage energy conservation.  Notably, after weighing all of the evidence submitted—including expert reports—the PSC disagreed with Sierra Club that the fixed rates contained in the settlement agreement "would encourage customers to use more energy" in violation of the EPL.  In fact, the PSC found that a large portion of most consumers' energy bills would remain variable, thus encouraging conservation.  Although Sierra Club may disagree with these findings by arguing that a lower fixed cost would result in greater energy conservation and would remain cost-effective, "a reasonable person could arrive at the same conclusion as the agency."  *See Clean Wis.*, 282 Wis. 2d 250, ¶46.

## CONCLUSION

¶42    In short, the PSC's ratemaking decisions, including the decision in this case approving MGE's fixed rates, are not rules as defined under WIS. STAT. § 227.01(13).  In addition, the PSC complied with the EPL, and its decision approving the fixed rates was supported by substantial evidence.  We therefore affirm.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.